## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

ZAID NASSAR,  
       Plaintiff

      vs

WARDEN, BUTLER COUNTY  
JAIL, et al.,  
       Defendants

Case No. 1:10-cv-031  
Weber, J.  
Litkovitz, M.J.

**REPORT AND**  
**RECOMMENDATION**

This matter is before the Court upon defendants' motion for summary judgment (Doc. 20), plaintiff's response in opposition, (Doc. 21), and defendants' reply in support of their motion for summary judgment. (Doc. 22). Plaintiff has also filed a "surreply" in opposition to the motion for summary judgment. (Doc. 23).

### I. Introduction

Plaintiff Zaid Nassar, proceeding pro se, brings this action under 42 U.S.C. § 1983 against Lieutenant Ed Martin, the former Warden of the Butler County Jail, and Butler County Jail employees Sergeant Rob Clendenin, Lieutenant Dennis Adams, and Corrections Officer Mike Mariano. (Doc. 3). Plaintiff claims that defendants discriminated against him on the basis of his religion by not providing him adequate meals during Ramadan and improperly removing him from the Ramadan observance list while he was a pretrial detainee at the Butler County Jail. (*Id.*, at 8). Plaintiff seeks damages in the amount of $300,000 and requests that defendants Mariano, Clendenin and Adams be removed from their positions because of their discriminatory actions against Muslims. (*Id.*, at 9).

**II. Facts alleged in the complaint**

Plaintiff was incarcerated at the Butler County Jail as a pretrial detainee from May 20, 2008 to February 4, 2009. (Doc. 20 at 3). Before the September 1, 2008 start of Ramadan, plaintiff made arrangements with the Social Services department to receive his lunch and dinner meals at sunset when he broke his fast. (Doc. 3 at 5). Plaintiff was placed on the Ramadan observance schedule. (*Id.*). However, contrary to plaintiff's understanding that every inmate is supposed to receive three meals a day[1], starting on September 1, 2008, plaintiff received only one meal tray for the entire day. (*Id.*). Plaintiff complained to the officers, including Officer Mariano, but to no avail. (*Id.* at 5-6). Officer Mariano responded, "That's all you are going to receive, you terrorist[]." (*Id.* at 6).

Plaintiff felt that he had no option but to request his lunch and to hold it until after sunset when he broke his fast. (*Id.*). Defendant Mariano noticed that plaintiff had received lunch on September 7, 2008, and confronted him about it. (*Id.*). Sergeant Clendenin was called to the unit, and plaintiff personally advised him that plaintiff did not care about the lunch, but he was receiving only one meal tray after sunset and by policy he was supposed to received a regular meal and daily calorie diet like any other inmate. (*Id.*). When Clendenin responded the jail was not doing that, plaintiff responded they could not discriminate against him because of his religion and he was supposed to receive three meals like any other inmate. (*Id.*). Officer Mariano then told plaintiff he was taking him off the Ramadan observance schedule, and plaintiff received

---

[1] Plaintiff alleges that the United States Marshal's Office has a policy that federal inmates housed in the Butler County Jail during pre-trial detention should receive three trays of meals per day during Ramadan. Aside from the allegations in the complaint, there is no evidence of any such policy in the record. Even if there were, for the reasons explained *infra*, the Ramadan policy followed by jail officials in this case was reasonably related to legitimate penological needs and passes constitutional muster.

2

nothing in the evening for the rest of Ramadan.  (*Id.*).  Plaintiff was subsequently removed from the Ramadan observance list by defendant Mariano.  (*Id.*).  Plaintiff received no meal after sunset for the rest of Ramadan.  (*Id.*).

The day after he was removed from the Ramadan observance list, plaintiff filed a grievance asking to speak with Lieutenant Adams or someone from the Marshals Service.  (*Id.*, Exh. A).  The grievance was not forwarded to Lieutenant Adams until November 29, 2008.  (*Id.* at 6).  After receiving no response, plaintiff again filed a complaint over the incident on October 1, 2008, the last day of Ramadan.  (*Id.*).  Lieutenant Adams interviewed him regarding his complaint on November 29, 2008, and agreed that the officers were wrong for removing plaintiff from the Ramadan list.  (*Id.*).

Plaintiff spoke with the daily officer, Officer White, who told plaintiff he was not supposed to be taken off the Ramadan list.  (*Id.*).  Officer White stated that he would continue to order lunch trays for plaintiff.  (*Id.*).  Plaintiff did not take a lunch tray any more because most of the food would spoil by sunset, but instead he snacked on junk food and water.  (*Id.*).  Officer White told him that this was wrong as plaintiff was supposed to receive a bag at breakfast and two trays of meals at sunset according to the policy of the United States Marshals.  (*Id.*).

Plaintiff was transferred to Allenwood Low Federal Correctional Institution on February, 4, 2009.  (*Id.*, p. 5; Doc. 20 at 5).  Plaintiff filed this action on January 21, 2010.  (Doc. 1).

**III. Defendants' Motion for Summary Judgment**

Defendants move for summary judgment on the grounds that (1) plaintiff did not fully exhaust the administrative remedies available to him at the Butler County Jail before he filed his complaint as mandated by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), and

3

(2) plaintiff's First Amendment claim fails on the merits.

### A. Summary Judgment Standard

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)).

In response to a properly supported summary judgment motion, the non-moving party "'is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989) (quoting *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)).  The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor.  *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)).  However, a district court need not view the facts in the light most favorable to the nonmoving party if that party's version of events is "blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

A principal purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.  *Celotex,* 477 U.S. at 323-24.  The moving party need not support his motion with evidence disproving the opposing party's claims.  Rather, the moving

party need only point out there is an absence of evidence supporting such claims. *Hartsel v.*

*Keys,* 87 F.3d 795, 799 (6th Cir. 1996) (citing *Celotex,* 477 U.S. at 325). Nor must the Court

search the entire record for material issues of fact. *Street*, 886 F.2d at 1479-80. The Court need

only determine "whether the evidence presents a sufficient disagreement to require submission to

a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,*

477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to

find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial*

*Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

> [T]he Court must review carefully those portions of the submitted evidence
> designated by the moving party. The Court will not, however, sua sponte comb the
> record from [the non-moving party's] perspective. Instead, the Court may
> reasonably rely on [the movant's] unrebutted recitation of the evidence, or
> pertinent portions thereof, in reaching a conclusion that certain evidence and
> inferences from evidence demonstrate facts which are uncontroverted.  If such
> evidence supports a conclusion that there is no genuine issue of material fact, the
> Court should determine that [the movants] have carried their burden. . . .

*Mongan v. Lykins*, No. 1:09-cv-00626, 2010 WL 2900409, at *3  (S.D. Ohio 2010) (Spiegel, J.).

**B.  Qualified Immunity standard**

Qualified immunity protects government officials performing discretionary functions

"from liability for civil damages insofar as their conduct does not violate clearly established

statutory or constitutional rights of which a reasonable person would have known." *Harlow v.*

*Fitzgerald,* 457 U.S. 800, 818 (1982).  Qualified immunity not only insulates government

officials from individual liability for money damages, but from the burdens and expenses of

litigation and trial. *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001).

Once a defendant raises a qualified immunity defense, the plaintiff must satisfy a two

pronged analysis: (1) taken in the light most favorable to the party asserting the injury, do the facts alleged show that the officer's conduct violated a constitutional right, and (2) if a violation could be made out on a favorable view of the plaintiff's submissions, was the right clearly established at the time of the injury? *Saucier,* 533 U.S. at 201. In its discretion, the court may initially address either of these questions in light of the circumstances of the particular case before it in resolving an officer's qualified immunity claim. *Pearson v. Callahan,* 129 S.Ct. 808, 818 (2009).

In determining whether a right is "clearly established" for purposes of the qualified immunity analysis, the Court must determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Saucier*, 533 U.S. at 202. This question must be answered "in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (quoting *Saucier*, 533 U.S. at 201). The unlawfulness of the officer's conduct must be apparent in light of pre-existing law. *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). "If officials of reasonable competence objectively could disagree on the law, immunity should be recognized." *Cameron v. Seitz,* 38 F.3d 264, 272 (6th Cir. 1994) (citing *Mumford v. Zieba,* 4 F.3d 429, 432 (6th Cir. 1993)).

### C. Plaintiff has satisfied the PLRA's exhaustion requirement.

Defendants contend that plaintiff has failed to show he exhausted all available administrative remedies. Defendants argue that plaintiff cannot maintain this action because there is "no record that he ever appealed any of the decisions by the on duty supervisor." (Doc. 20 at 7). Plaintiff argues the exhaustion of remedies requirement does not apply to him because he was a pretrial detainee at the Butler County Jail. (Doc. 21 at 9). Plaintiff also claims that the

6

exhaustion requirement does not apply in his situation because any remedy he would have sought after Ramadan would have been futile.  (*Id.*).

Under 42 U.S.C. § 1997e, as amended by the PLRA, a prisoner confined in any jail, prison or other correctional facility may not bring an action challenging "prison conditions" under 42 U.S.C. § 1983 or any other federal law "until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "The exhaustion rule applies to all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), including suits brought by pre-trial detainees. *Atman v. Hutchison,* 57 F. App'x 642, 643 (6th Cir. 2003) (citations omitted). *See also Spencer v. Bouchard*, 449 F.3d 721 (6th Cir. 2006) (pretrial detainee's claims dismissed based on failure to exhaust administrative remedies).  Moreover, exhaustion of available remedies is required even when proceeding through the administrative system would be futile. *Richard v. Luoma*, 440 F.3d 361, 363 (6th Cir. 2006).  *See also Jones Bey v. Johnson*, 407 F.3d 801, 805 (6th Cir. 2005); *Pryor v. Harper*, No. 2:05-cv-474, 2006 WL 1526126, at *3 (S.D. Ohio May 31, 2006).

Failure to exhaust is an affirmative defense under the PLRA which must be established by the defendant. *Napier v. Laurel County, Ky.*, 636 F.3d 218, 223 (6th Cir. 2011) (citing *Jones v. Bock*, 549 U.S. 199, 204 (2007); *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 888 (6th Cir. 2009)).  "[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007).

Here, the record shows that plaintiff adequately exhausted the administrative remedies available to him under the Butler County Jail's multi-step Inmate Grievance Procedure.  (*See* Doc. 27, Exh. A).  The inmate grievance procedure provides:

7

> Upon receiving the grievance form, the Supervisor shall review for possible
> solution. . . . If a solution cannot be achieved by the Supervisor or the inmate is
> not satisfied with the response from the Supervisor, then the grievance form will
> be forwarded to the Deputy Warden. Appeals may be made by the inmate
> completing a new grievance form.

(Doc. 27, Exh. A at ¶¶ B.1, 3).

Plaintiff initiated the grievance procedure on September 7, 2008, after he was removed

from the Ramadan observance list, by filing an "Inmate Service Request" and complaining:

"they are missing (sic) with my religion. I need to speak with Lt. Adams or someone from the

Marshall's office." (Doc. 3, Exh. A). It is not entirely clear what action jail staff took in

response to plaintiff's grievance. The "Staff Description of Action Taken" portion of the

grievance form suggests that plaintiff's grievance was forwarded to defendant Adams as

requested by plaintiff: "Forward to Lt. Adams. Was not receiving tray during fast. Wanted to

receive 2 trays at dinner and receive lunch tray to give away during lunch." (Doc. 3, Exh. A).

However, defendant Adams avers that he does not recall seeing the grievance until November 29,

2008. (Adams Aff., Doc. 20, Exh. C). In any event, when plaintiff was dissatisfied with the lack

of any response to his grievance, he filed a second Inmate Service Request on October 1, 2008.

(Doc. 3, Exh. B). In that grievance, plaintiff stated that he had asked to speak with a prison

official a few weeks earlier about receiving two trays at night during Ramadan, and plaintiff

asked why no one had responded. Under the terms of the grievance procedure, the new grievance

form filed on October 1 is properly construed as an appeal in view of the jail officials' failure to

respond to the first grievance. (*See* Doc. 27, Exh. A at ¶ B.3). Plaintiff was entitled to treat the

jail officials' failure to timely respond to the first grievance as a denial of the grievance. *See*

*Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011). By filing his second grievance or appeal,

8

plaintiff completed all steps required of him under the grievance procedure.

In addition, there is no evidence that jail officials timely or properly responded to plaintiff's grievances in accordance with their own policy. There is no evidence that a Supervisor reviewed the initial grievance form upon receiving it in accordance with step one of the grievance procedure. Moreover, plaintiff never received a written decision on his grievance from the Deputy Warden in contravention of the last step of the grievance procedure, which mandates that when an inmate makes an appeal by completing a new grievance form, the Deputy Warden "shall then review the grievance form, make a decision and respond in writing within five (5) working days." (*See* Doc. 27, Exh. A at ¶ B.4). To the contrary, plaintiff received only a verbal response from defendant Adams on November 29, 2008, nearly two months after he filed the second grievance. At that time, defendant Adams spoke with plaintiff, informed him that he had just seen his Inmate Service Request, and advised him to follow the "proper request form procedures." (Adams Aff., Doc. 20, Exh. C). The failure of jail officials to respond to plaintiff's grievance in accordance with the terms of the Inmate Grievance Procedure rendered the administrative remedy unavailable to plaintiff. *See Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 996 (6th Cir. 2004). *See also Risher*, 639 F.3d at 240 (administrative remedies are exhausted when prison officials fail to timely respond to properly filed grievance). Defendants have not shown that plaintiff failed to fully exhaust his administrative remedies. Therefore, summary judgment should not be granted for defendants on this basis.

**D. Defendants should be granted summary judgment on plaintiffs' § 1983 claim.**

To establish a claim under 42 U.S.C. § 1983, the plaintiff must prove that "(1) a person, (2) acting under color of state law, (3) deprived a plaintiff of a federal right." *Berger v. City of*

9

*Mayfield Heights*, 265 F.3d 399, 405 (6th Cir. 2001). The right at issue in this case is plaintiff's First Amendment right to practice his religion, which prisoners retain subject to reasonable restrictions and limitations. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). These limitations "arise both from the fact of incarceration and from valid penological objectives-including deterrence of crime, rehabilitation of prisoners, and institutional security." *Id.* (citations omitted). When balancing the pertinent factors, the "evaluation of penological objectives is committed to the considered judgment of prison administrators, 'who are actually charged with and trained in the running of the particular institution under examination.'" *Id.* at 349 (quoting *Bell v. Wolfish*, 441 U.S. 520, 562 (1979)).

To ascertain whether prison officials took actions which infringed upon a prisoner's religious practices or beliefs, the Court must first determine whether the particular practice or belief is "sincerely held." *Kent v. Johnson*, 821 F.2d 1220, 1224 (6th Cir. 1987) (citations omitted). Second, the Court must determine whether the challenged practice of the prison officials infringes on the religious belief or practice. *Id.* at 1225. Third, the Court must decide whether the challenged practice "furthers some legitimate penological objective." *Id.* (citations omitted); *Turner v. Safley*, 482 U.S. 78, 89 (1987). A regulation that impinges on inmates' constitutional rights is valid "if it is reasonably related to legitimate penological interests." *Id.* at 89.

The Court's reasonableness inquiry is guided by several factors, including: (1) whether there is a valid and rational connection between the regulation or restriction and the asserted governmental objective; (2) whether plaintiff has alternative means of exercising his right of freedom of religion; (3) the impact that accommodation of the asserted right will have on others,

10

such as inmates and guards, in the prison; and (4) the existence of ready alternatives to the

regulation or restriction that fully accommodate plaintiff's rights. *Turner*, 482 U.S. at 89-91.

*See also Pollock v. Marshall*, 845 F.2d 656 (6th Cir. 1988) (applying *Turner* analysis to an

inmate's free exercise claim).  The *Turner* factors are guidelines to be weighed and balanced in

evaluating the reasonableness inquiry, rather than four prongs of a test which must each be

satisfied. *Whitney v. Brown*, 882 F.2d 1068, 1076 (6th Cir. 1989).  "[A] trial court is not required

to weigh evenly, or even consider explicitly, each of the four *Turner* factors." *Spies v. Voinovich*,

173 F.3d 398, 403 (6th Cir. 1999).  The *Turner* factors are "simply 'relevant' to the ultimate

inquiry a court must undertake . . . in determining whether a prison regulation is 'reasonably

related to legitimate penological interests.'" *Id.* (citing *Turner*, 482 U.S. at 89).  The Court

should address those factors which are most helpful and applicable to the given case. *See Skelton*

*v. Pri-Cor, Inc.,* 963 F.2d 100, 103 (6th Cir. 1991).

　　　　Plaintiff has not come forward with evidence to show there is a genuine issue of material

fact on the elements of his First Amendment claim.[2]  There is no dispute that plaintiff is a

Muslim who arranged to be placed on the Butler County Jail's Ramadan observance list.  The

affidavits submitted by defendants establish that inmates placed on the Ramadan observance list

at the Butler County Jail eat two meals a day consisting of breakfast before sun-up and dinner

after sundown; they fast during the day; and they do not get lunch. (Clendenin Aff., Doc. 20,

Exh. B; Martin Aff., Doc. 20, Exh. E).  This procedure allows an inmate to observe Ramadan

fasting requirements of abstaining from meals during the daylight hours during the 30 days of

---

[2]  Plaintiff has not submitted any affidavits, declarations, or other evidentiary materials to refute defendants'
evidence with the exception of the two grievances he filed.

Ramadan. (Affidavit of Chaplain Charles Benton, Doc. 20, Exh. A).

The evidence further shows that while the Butler County Jail accommodated plaintiff's special dietary needs during Ramadan by providing breakfast before sun-up and dinner after sundown, the jail had a policy that "if an inmate who is on a special diet is observed eating foods that contradict the beliefs of said diet, the diet may be stopped." (Clendenin Aff., Doc. 20, Exh. B, ¶ 5; Martin Aff., Doc. 20, Exh. E).[3] There is no question that application of this policy to plaintiff infringed on the practice of his religion by making it difficult for him to follow the Ramadan fasting schedule. The issue then is whether plaintiff's removal from the Ramadan observance list for taking the lunch meal tray was "reasonably related to legitimate penological interests." *See Turner*, 482 U.S. at 89.

Plaintiff's removal from the Ramadan observance list satisfies the *Turner* standard. Defendants have shown there is a reasonable basis for removing those who fail to adhere to the Ramadan meal schedule from the observance list. Defendants state that the list is formulated to insure efficiency in meal planning and distribution while accommodating those Muslims who fully observe the Ramadan fasting requirements. Defendants assert that during Ramadan, the jail prepares lunch trays only for the inmates who are not on the observance. Defendants explain that allowing inmates who are on the list to take trays to keep until after sunset would therefore deprive a number of non-fasting inmates of their lunches. (Doc. 20 at 11-12). Defendants

---

[3] According to defendants' affidavits, a correctional officer who observes an inmate taking a lunch does not have the authority to remove an inmate from the Ramadan Observance List but is required to report the incident to Inmate Services or to the Supervising Sergeant. (Mariano Aff., Doc. 20, Exh. D). Sergeant Clendenin states that the Inmate Services Supervisor makes the decision as to whether an inmate is removed from the list. (Clendenin Aff., Doc. 20, Exh. B). Lieutenant Martin states in his affidavit that he reviewed reports of violations of special diets generated by officers and indicates that he had the authority to remove prisoners from the observance list. (Martin Aff., Doc. 20, Exh. E).

further contend that inmates are removed from the observance list if they break the fast because (1) other inmates would become upset if they saw inmates on the Ramadan observance list receive special treatment and be permitted to obtain lunch in violation of the rules, and (2) an inmate who violates the Ramadan observance schedule shows disrespect to those who are adhering to the schedule because of their religious beliefs. (Martin Aff., Doc. 20, Exh. E). These are legitimate reasons for removing an inmate who breaks the dietary rules from the observance list. *See Berryman v. Granholm,* 343 F. App'x 1, 6 (6th Cir. 2009) (prison had legitimate penological interest in removing prisoner who ordered non-kosher food from kosher meal program because of the need to control the cost of the program; to ensure only those with sincere beliefs participate in the program; and to maintain discipline within the prison). *See also Russell v. Wilkinson*, 79 F. App'x 175, 177 (6th Cir. 2003) (prison had legitimate penological interest in removing prisoner who was obviously not observing kosher food requirements outside of meals from kosher meal program because of the need to maintain discipline in the facility).

As for the existence of alternatives, plaintiff apparently was able to continue to fast during Ramadan according to the allegations of the complaint, although he alleges that he was forced to snack on non-nutritious food. (Doc. 3 at 7). Although this is not an adequate alternative to the Ramadan meal schedule, the allocation of prison resources would be adversely impacted if prisoners participating in the Ramadan observance meal schedule were able to take meals during the day or otherwise not adhere to the schedule without suffering any consequences. *See Berryman*, 343 F. App'x at 6.

Thus, on balance, the *Turner* factors weigh in favor of defendants. Plaintiff has not produced evidence to show that his removal from the Ramadan observance list violated his First

13

Amendment rights.  Accordingly, to the extent the individual defendants played a role in removing plaintiff from the Ramadan observance list, they should be granted qualified immunity on plaintiff's claims brought against them in their individual capacities.  Defendant Adams should be granted summary judgment for the additional reason that plaintiff's only allegation against him is that he did not respond to plaintiff's grievance until November 29, 2008.  (Doc. 3, ¶ 12).  Plaintiff has presented no evidence that Lieutenant Adams was even aware of his removal from the Ramadan observance list prior to that date.  Section 1983 liability cannot be imposed under such circumstances.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (§ 1983 liability must be based on more than respondeat superior or a mere failure to act and must be premised on "active unconstitutional behavior").

Finally, insofar as plaintiff seeks to sue the individual defendants in their official capacities, his suit must be treated as a suit against Butler County.[4]  *See Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1244 (6th Cir. 1990).  A county is not vicariously liable for injuries inflicted solely by its employees under § 1983.  *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 441 (6th Cir. 2000) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 (1978)).  To establish his claim against Butler County for his injuries, plaintiff must show that the constitutional injury he alleges resulted from the execution of a county policy or custom.  *Id.*  A county cannot be held liable under § 1983 where the plaintiff fails to show a constitutional violation by its employees in the first instance.  *See Kinkus v. Village of Yorkville, Ohio*, 289 F.

---

[4]  Plaintiff does not specify whether he brings his claims against defendants in their individual or official capacities. However, defendants argue that summary judgment should be granted in favor of Butler County insofar as plaintiff brings a claim against it. (Doc. 20 at 14-15).  Thus, because Butler County has had an opportunity to respond to a claim against it, the Court will construe the complaint as asserting claims against defendants in both their individual and official capacities. *See Leach*, 891 F.2d at 1245.

App'x 86, 93 (6th Cir. 2008) (citing *Brennan v. Twp. of Northville*, 78 F.3d 1152, 1158 (6th Cir.

1996)).  Because plaintiff has not produced evidence showing that any of the individual

defendants violated his constitutional rights, there is no basis for imposing § 1983 liability on

Butler County.


### IT IS THEREFORE RECOMMENDED THAT:

1.  Defendants' motion for summary judgment (Doc. 20) be **GRANTED**.

2.  The Court certify pursuant to 28 U.S.C. § 1915(a)(3) for the foregoing reasons that an appeal
of any Court Order adopting the Report and Recommendation would not be taken in good faith.
*See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).


Date: _9/1/2011_

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ZAID NASSAR,                                   Case No. 1:10-cv-031
     Plaintiff                              Weber, J.
                                            Litkovitz, M.J.

     vs

WARDEN, BUTLER COUNTY
JAIL, et al.,
     Defendants

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

■ Complete items 1, 2, and 3. Also complete
   item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
   so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
   or on the front if space permits.

| A. Signature | |
|---|---|
| X | ☑ Agent ☐ Addressee |

| B. Received by (Printed Name) | C. Date of Delivery |
|---|---|

1. Article Addressed to:

Zaid Nassar 04716-061
D. Ray James Corr. Facility
Unit F Pod 3
3262 Highway 252
Folkston, GA 31537

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☑ Certified Mail     ☐ Express Mail
   ☐ Registered         ☐ Return Receipt for Merchandise
   ☐ Insured Mail       ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)            ☐ Yes

2. Article Number
   (Transfer from service label)

7003 2260 0002 6723 4064

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540